*********** Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. RSKCo. was the carrier on the risk at all times relevant herein.
4. The date of plaintiff's injury by accident was 30 April 1991.
5. The parties stipulated that plaintiff's average weekly wage was $750.00, yielding a maximum compensation rate for 1991 of $406.00.
6. The parties stipulated to the following:
 a. Medical records from Neal S. Taub, M.D., covering a period of time from 26 March 1996 through 22 October 1997;
 b. Medical records from Charlotte Neurosurgical Associates, P.A., dated 27 April 1991;
 c. Three Functional Capacity Evaluations dated 15 September 1992, 14 July 1993 and 16 June 1998;
 d. A 19 June 1998 letter from defense counsel to plaintiff's counsel offering plaintiff a position of employment with defendant-employer.
 *********** MOTION
On 25 July 2001, defendants filed a motion seeking to have included in the record the following correspondences:
 1. Letter dated 23 October 2000 from defense counsel to Deputy Commissioner Pamela T. Young;
 2. Letters dated 10 June 1998, 11 June 1998, 17 June 1998, and 18 June 1998, from defense counsel to plaintiff's counsel.
 3. Facsimile transmission dated 11 June 1998 from plaintiff's counsel to defense counsel.
 4. Letter dated 19 June 1998 from defense counsel to Dr. Kenneth E. Wood.
 For good cause shown, defendants' motion is hereby ALLOWED. The correspondence listed above is admitted into evidence and considered by the Full Commission in the resolution of this claim.
 ***********
Based upon all the evidence adduced from the record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 30 April 1991, plaintiff was employed as a truck driver by Interstate Distributors, Inc., which subsequently became AmeriServe, Inc. On 30 April 1991, plaintiff suffered a compensable injury to his back which arose out of and in the course of his employment with defendant-employer. He began receiving medical and disability benefits pursuant to an Industrial Commission Form 21 Agreement for Payment of Compensation which was approved on 27 June 1991.
2. On 26 June 1991, defendants filed a Form 28 Return to Work Report which indicated that plaintiff returned to work on 10 June 1991 at his pre-injury wages. His job duties were limited to office type work. On 11 February 1992, the Industrial Commission approved an Industrial Commission Form 26 Supplemental Agreement for Payment of Compensation between the parties which reinstated plaintiff's temporary total disability compensation beginning on 21 January 1992 and continuing for "necessary weeks."
3. Following his injury, plaintiff underwent a period of conservative treatment which failed and on 5 December 1991, plaintiff presented to orthopedic surgeon Dr. Kenneth Wood, with complaints of lower back pain which had increased over the previous several months.
4. After examining and treating plaintiff for a period of time, Dr. Wood determined that surgery was appropriate and on 9 March 1992, plaintiff underwent lumbar spine fusion surgery. Dr. Wood continued to treat plaintiff following his surgery and initially determined that plaintiff had reached maximum medical improvement on 14 April 1993 and assigned plaintiff a 25% permanent partial impairment rating to his back. At the time plaintiff reached maximum medical improvement he remained totally disabled from his compensable injury.
5. After 14 April 1993, plaintiff continued to heal and his physical condition improved such that on 28 July 1995 after reevaluating plaintiff at the request of his attorney, Dr. Wood noted that plaintiff had "no acute distress, has normal gait and normal heel and toe walking, has negative straight leg raising test and normal neurological function." Dr. Wood determined that plaintiff's fusion mass was solid and advised plaintiff to return to the workforce in "some kind of light work." Because of plaintiff's continuing complaints of pain, Dr. Wood did not recommend that plaintiff return to his former employment, but "advised him strongly to get as much training as possible to pursue some other kind of work."
6. In August 1996, defendant-employer retained the services of rehabilitation specialist Gray Broughton, to assist plaintiff in his attempt to return to the workforce. Following his initial meeting with plaintiff and plaintiff's legal counsel, at the request of plaintiff's counsel, Mr. Broughton prepared a written plan to follow in attempting to return plaintiff to the workforce.
7. In October 1996, plaintiff refused to participate in vocational rehabilitation and cooperate with Mr. Broughton. Plaintiff testified that Mr. Broughton was sending him out to "petty job offers" that had no relation to his experience, and that Mr. Broughton's sole intent was to make him go back to work regardless of the type of job plaintiff obtained. Plaintiff discussed Mr. Broughton's efforts with his counsel, who recommended that plaintiff no longer cooperate with Mr. Broughton.
8. At some point in 1996 or 1997, plaintiff left the Charlotte area and moved to Murrells Inlet, on the coast of South Carolina. After relocating to South Carolina, plaintiff and Diane Price started a commercial fishing business under the name of D L Fishing, Inc. Plaintiff testified that he owned the business and that he occasionally helped fuel the boat or perform minor maintenance, but that the boat was operated by employees and that he never received any profits from this business.
9. On 24 November 1997, defendant-employer filed an Industrial Commission Form 24 Application to Terminate Benefits based upon plaintiff's refusal to cooperate with vocational rehabilitation. Following a telephonic conference before a Special Deputy Commissioner held on 27 May 1998, plaintiff was ordered on 29 May 1998 to cooperate with all medical or other treatment or rehabilitative procedures as required by N.C. Gen. Stat. § 97-25.
10. During the time period from 1996 through 1999, plaintiff's physical condition continued to improve. At various times between 1997 and 1998 plaintiff was observed and surveilled installing a heating system, carrying 2x4's and framing an addition on a building, loading and unloading trash at the city dump, operating a riding lawnmower, removing an engine block from a pick-up truck and placing it in the bed of another vehicle, performing cleaning and other operations on a boat and other activities.
11. In early 1998 Mr. Broughton contacted defendant-employer by letter seeking job opportunities for plaintiff within his light duty restrictions as imposed by Dr. Wood in his 28 July 1995 office note. Mr. Broughton also discussed the Health South Physical Therapy Discharge Summary dated 14 July 1993, which limited plaintiff to work at a "light physical demand level" and to "avoid staying in prolonged positions," and which stated that "upon completion of the Work Hardening/Physical Therapy Program, this client is demonstrating the physical demand characteristics in the Light/Medium category, reflecting lifting up to 40 lb. occasionally, and 20 lb. frequently." Defendant-employer responded with possible jobs and Mr. Broughton prepared a job description for a position of selector auditor. On 3 June 1998, Mr. Broughton forwarded a copy of the selector auditor job description to Dr. Wood for his review. Dr. Wood had not examined plaintiff since 28 July 1995 and did not have the benefit of the subsequently acquired information from the Functional Capacity Evaluation performed on 16 June 1998. Dr. Wood approved the position as appropriate for plaintiff on 15 June 1998. No weight is given to Dr. Wood's approval of the selector auditor job as suitable for plaintiff. The medical records upon which Dr. Wood based his opinion were too old to be reliable indicators of plaintiff's capacity to earn wages on 15 June 1998. Mr. Broughton did not copy counsel for either party with the description as required by Industrial Commission rehabilitation rules.
12. On 16 June 1998, plaintiff underwent a Functional Capacity Evaluation conducted at Pro Med Work Evaluation Center in Charlotte, North Carolina. The evaluator determined that plaintiff could return to unrestricted medium duty work and restricted heavy-duty work.
13. On 17 June 1998, defense counsel served plaintiff's counsel with videotapes of plaintiff's surveilled activities which were recorded at various times between 1997 and 1998. On 18 June 1998, defense counsel provided plaintiff's counsel via facsimile transmission with surveillance reports of plaintiff's activities prepared by a number of private investigators.
14. On 19 June 1998, Mr. Broughton copied counsel for both parties regarding the selector auditor job. On the same date, defense counsel wrote to plaintiff's counsel regarding the job offer from defendant-employer for a selector auditor position at a pay rate of approximately $10.00 — $13.00 an hour. The selector auditor job was a position that was within plaintiff's physical restrictions as those restrictions were described in the 16 June 1998 Functional Capacity Evaluation. Plaintiff did not accept this job offer.
15. On 19 June 1998, defense counsel provided Dr. Wood with copies of the surveillance tapes and reports prepared by various investigators. Plaintiff's counsel had been provided with the tapes on 17 June 1998 and was copied on the letter to Dr. Wood. On 26 June 1998, Dr. Wood prepared an office note regarding his review of the surveillance information and concluded that plaintiff should be able to work at full duty without any restrictions. Because Dr. Wood had not examined plaintiff since 28 July 1995, the Full Commission gives no weight to this opinion.
16. On 26 June 1998, the parties participated in a telephone conference hearing with Deputy Commissioner Edward Garner, Jr. presiding, at which time plaintiff's Motions in Limine and Motion for Sanctions and Defendant's Motion to Quash Subpoena and Motion for Protective Order were heard by Deputy Commissioner Garner. At that hearing, plaintiff's counsel argued that Dr. Neal Taub was, and had been for some time, plaintiff's treating physician. Deputy Commissioner Garner agreed with plaintiff's position and subsequently entered an Order dated 24 September 1998 designating Dr. Taub as plaintiff's treating physician and ordered defendant-employer to seek vocational rehabilitation assistance for plaintiff and also ordered plaintiff to comply with any offered vocational rehabilitation.
17. Following the Motion hearing before Deputy Commissioner Garner, defendant-employer retained the services of Mr. David Price, a vocational rehabilitation specialist from South Carolina to provide assistance to plaintiff in returning to the job market in South Carolina.
18. On 19 August 1998, Mr. Price and plaintiff entered into a Placement Agreement regarding proposed job searches which required plaintiff to make five direct, independent contacts with perspective employers each week. Plaintiff has failed to meet this obligation.
19. As part of the vocational rehabilitation process and his work with Mr. Price, plaintiff kept logs of his job leads. Plaintiff listed contacts at Lewis Trucking Company and T. C. Transfer, Inc., but his list consisted of people that either did not work for those companies or did not exist.
20. In his job search log, plaintiff stated that on 25 September 1998, he contacted Hardee's Mobile Homes of Georgetown, South Carolina. Plaintiff's job search log does not indicate that he was offered a position with Hardee's Mobile Homes. Plaintiff testified at the hearing that he never spoke with Mr. Bobby Hardee in 1998 nor did Mr. Bobby Hardee offer him a job in 1998.Mr. Hardee, however, testified that plaintiff was indeed offered a position of employment as a truck driver at Hardee's Mobile Homes in September 1998. Greater weight is accorded to the testimony of Mr. Bobby Hardee.
21. Mr. Hardee further testified that in March 2000, plaintiff and his fiancée Diane Price, traveled to Georgetown, South Carolina to meet with Mr. Hardee. At this meeting, plaintiff attempted to convince Mr. Hardee to give false statements under oath at his deposition in this matter on 13 September 2000, and to give false testimony under oath at the hearing of this matter before the Deputy Commissioner.
22. In the process of following up on plaintiff's job search log and attempting to assist plaintiff in improving his interview skills, Mr. Price learned of the job offer from Hardee's Mobile Homes to plaintiff. Mr. Price prepared a Job Analysis form for this job indicating that it is a medium duty job and fits within plaintiff's physical restrictions as set out in the June 1998 Functional Capacity Evaluation and the restrictions given by Dr. Wood in his 26 June 1998 office note.
23. The job offered to plaintiff by Hardee's Mobile Homes in South Carolina was a job that fit within plaintiff's physical restrictions pursuant to the June 1998 Functional Capacity Evaluation and Dr. Wood's 26 June 1998 office note. The job was a normal job available in the job market and was suitable to plaintiff's restrictions. Plaintiff unjustifiably refused suitable employment.
24. Plaintiff knowingly gave false testimony under oath at the hearing before the Deputy Commissioner regarding both the job offered to him by Hardee's Mobile Homes and his subsequent conversation with Mr. Bobby Hardee. Diane Price, plaintiff's fiancée, also knowingly made false statements under oath in the hearing before the Deputy Commissioner regarding plaintiff's conversations with Mr. Bobby Hardee in March 2000.
25. The competent evidence in the record establishes that plaintiff may have had some wage earning capacity through the running of the commercial fishing business, D L Fishing, Inc., in 1997, 1998, and 1999; however, defendant has not proven what plaintiff's wage earning capacity was during these years.
26. As of 25 September 1998, plaintiff had recovered from his lumbar spine surgery and was physically capable of returning to work with some restrictions, and was offered a suitable job which he refused.
27. On or about 11 February 1999, defendant-employer unilaterally ceased temporary total disability payments to plaintiff without filing an Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation and without a hearing or the approval of the Industrial Commission.
28. Because defendant-employer unilaterally ceased payments of plaintiff's temporary total disability compensation without filing an Industrial Commission Form 24 Application and without a hearing or the approval of the Industrial Commission, defendant-employer failed to comply with Rule 404 of the Workers' Compensation Rules. Accordingly, defendants are subject to sanctions, including reasonable attorney fees, pursuant to Rule 802. Defendants have not appealed from the imposition of attorney's fees as ordered by Deputy Commissioner Young.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff rejected suitable employment in violation of the Act and the Industrial Commission Order of 24 September 1998 when he failed to accept the job offered by Hardee's Mobile Homes on 25 September 1998 which was within his work restrictions. Accordingly, plaintiff is not entitled to any compensation during the continuance of such refusal. N.C. Gen. Stat. § 97-32.
2. By his conduct plaintiff has elected benefits under N.C. Gen. Stat. § 97-31.
3. Plaintiff is entitled to compensation for the 25% permanent partial disability rating to his back as assigned by Dr. Wood on 14 April 1993. N.C. Gen. Stat. § 97-31(23).
4. Defendants wrongfully, improperly and unilaterally terminated plaintiff's temporary total disability benefits on or about 5 February 1999 without an Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation and without a hearing, and in so doing have failed to comply with Workers' Compensation Rule 404.
5. Defendants' failure to comply with Workers' Compensation Rule 404 subjects them to sanctions pursuant to Workers' Compensation Rule 802, including the taxing against defendants of plaintiff's attorney's fees. Accordingly, plaintiff's attorney is entitled to an Award of attorney's fees from defendants.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is not entitled to further disability benefits pursuant to N.C. Gen. Stat. § 97-29. Therefore, plaintiff's application for further disability benefits pursuant to N.C. Gen. Stat. § 97-29 is DENIED.
2. Defendants shall pay plaintiff compensation for the 25% permanent partial disability to his back in the amount of $406.00 per week for 75 weeks.
3. Defendants shall pay plaintiff's counsel a lump sum in the amount of $2,000.00 in attorney's fees.
4. Plaintiff's counsel is hereby awarded attorney's fees of 25% of the compensation awarded in Paragraph 2 in addition to the fees awarded in Paragraph 3.
5. Based upon the testimony in this matter, plaintiff violated N.C. Gen. Stat. § 97-88.2 and this matter is hereby referred to the Fraud Unit of the North Carolina Industrial Commission for investigation.
6. Defendant shall pay the costs of this actions, including expert witness fees in the amount of $180.00 to Mr. Price, $180.00 to Mr. Broughton and $235.00 to Dr. Wood.
This the ___ day of October, 2001.
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER